PARNELL *v.* STATE.

4353                                        182 S. W. 2d 206

Opinion delivered July 10, 1944.

*Pickens & Pickens,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

HOLT, J. Appellant, Hubert Parnell, shot and killed Harry Henderson, the town marshal of Bradford, Arkansas, on October 5, 1943. He was indicted for murder in the first degree, found guilty by a jury of murder in the second degree and his punishment fixed at a term of twenty-one years in the state penitentiary. From the judgment comes this appeal.

For reversal, appellant questions (1) the sufficiency of the evidence to support the verdict, (2) the refusal of the court to give certain instructions requested by him, and (3) the admissibility of certain testimony.

1. The evidence most favorable to the state is to the following effect. At about 9 o'clock on the night of October 5, appellant went into Mrs. Scantlin's cafe in Bradford, and upon observing his wife sitting on a stool at the counter beside a man by the name of Charlie Turner and talking to him, appellant became enraged and began slapping her. He testified that he objected to his wife's having anything to do with Turner. Mrs. Scantlin tried to persuade him to cease striking his wife, and appellant replied: "This is my wife and I can hit her if I want to. . . . Why don't you call the law, the damn s—of—a—b won't arrest me. . . . I dare you to call the law, that damn Harry Henderson never will

arrest me." Appellant and his wife then left the cafe and on their way home, a short distance from the town, appellant was observed at two different times to strike his wife and knock her down.

T. C. Wilson, the night marshal, was attracted by Mrs. Parnell's screams and upon going over, said "What is going on here?" Appellant answered, "You had better stay out of this, this is a family affair, this is my wife and I caught her talking to another man." Wilson then told appellant that he was an officer, whereupon, appellant said "I don't give a damn if you are Jesus Christ and I had as soon die and go to Hell tonight as not." Appellant and his wife then proceeded a short distance down the highway when Mrs. Parnell screamed again for help, whereupon Wilson called Harry Henderson, the marshal. When Henderson came upon the scene, along with a man by the name of Clyde Whitley, Parnell, after cursing Wilson, said to Henderson: "Harry, you can't arrest me. I will kill both of you." While attempting to make the arrest, Wilson struck appellant on the head inflicting a slight wound. Appellant then ran and, crossing a field, went to his home, where his wife joined him a few minutes later. Harry Henderson, Wilson and two other men shortly thereafter, after having first procured a warrant, followed appellant to his home to arrest him. Upon approaching the house, they saw a light in one of the back windows. There is a porch about 14 ft. x 6 ft. in front of the house. Henderson walked up to within three feet of the porch and said: "Hubert," appellant answered "yes," and came to the open door with a rifle. "He came up with the gun and fired." This was all done in "I don't think over two seconds." The shot struck Henderson in the side and he died a few minutes later from the wound.

Mrs. Immogene Ray tended to corroborate Wilson's testimony as to the abusive language used by appellant toward Wilson.

Clyde Whitley testified that he called Harry Henderson after he had heard a woman's voice in distress. He drove Henderson and Wilson to the place where appel-

lant was abusing his wife and when Wilson got out, Parnell said, "Don't try to arrest me, you can't arrest me."

Dallas Stewart and Alvia Pennington, who accompanied Henderson and Wilson to appellant's house to arrest him, corroborated the testimony of Wilson as to the manner in which Henderson was killed by appellant.

W. D. Walker, a member of the state police force, testified that appellant told him when he shot Henderson he thought he was shooting at Charlie Turner, whom he said had been "playing around" with his wife.

W. D. Whitley, another state witness, said that he was mayor of Bradford in 1943, that Harry Henderson was elected marshal in April, 1943, and that Henderson arrested appellant for fighting in July of that year, and that the fine was collected by Harry Henderson. This was the only fine assessed against appellant.

Mrs. Otis Wyatt testified that appellant said, in her presence in September, prior to the killing, that he had paid a fine but that it was not over.

Marcus Osborne testified that about two months prior to Henderson's death, he heard appellant say, "If Mr. Henderson said anything to him he would run him in the river and drown him."

Joe Williams testified that he heard appellant, in speaking of Harry Henderson, say that "he was going to run that s—of—a—b in the river."

Andrew McDougal testified that about three weeks before Henderson was killed, he heard appellant say, "There is a guy (meaning Henderson) that just ain't big enough to arrest me, I wouldn't go with him."

There was testimony on the part of appellant that he did not intend to kill Harry Henderson, that he had nothing against him, that he thought he was shooting at Charlie Turner, whom his wife had told him had made indecent proposals to her, that he had warned his wife to stay away from Turner, and that he was protecting his home.

We have reviewed all the testimony and think it was sufficient to warrant the jury in finding that the killing was done under such circumstances as made it the crime of murder in the second degree. *White* v. *State,* 74 Ark. 491, 86 S. W. 296; *Hall* v. *State,* 113 Ark. 454, 168 S. W. 1122.

2. Appellant apparently does not seriously contend that there was error in the instructions. On this point he says: ''While not abandoning these grounds, counsel for appellant is inclined toward the conclusion that while the proffered instructions were a correct declaration of the law in the case, perhaps most of them were covered by instructions given by the court on his own motion.'' In this connection, it suffices to say that we have carefully reviewed all the instructions, and we think all issues were fairly and fully covered by correct and clear declarations of the applicable law.

3. Appellant next insists that the court erred in admitting the testimony of W. D. Whitley, *supra,* relating to the arrest of appellant by Harry Henderson, the imposition of a fine against appellant following this arrest and some three months prior to the killing, and Henderson's subsequent collection from appellant of the fine imposed. We think, however, the objection untenable since the testimony tended to show appellant's motive and his state of mind or attitude toward Harry Henderson.

Appellant also argues that there was error in admitting the testimony of Mrs. Otis Wyatt, *supra,* to the effect that sometime in September, prior to the killing, she heard appellant, in a conversation, say that he had paid a fine, but it was not over. We think, however, that no error appears for the reason that this testimony likewise tended to show motive on the part of appellant.

Appellant assigns as error the action of the trial court in refusing to permit appellant to testify relative to a conversation alleged to have taken place between him and his son. The conversation referred to was as follows: ''Q. You said do what? A. I said, 'Son, are

you afraid to go down and get Albert to come up here, I have killed Harry Henderson' and he said, 'Daddy, I am afraid, but   .   .   .' '' We think this testimony properly refused for the reason that it is in the nature of a self-serving declaration.

Finally, appellant says that the trial court erred in admitting the following testimony of witness, J. C. Hart, on behalf of the state in rebuttal. ''Q. Did any conversation occur between Mr. Plant and Parnell about the killing on the way back? A. Yes, sir. Q. Tell the jury what it was. A. On the way back Mr. Plant asked Parnell why he killed Harry Henderson, and he said he didn't know he was killing him, he said, 'I thought I was killing the man that was running around with my wife,' and Mr. Plant said, 'You will have a hard time making a jury believe that.' He said, 'I don't give a G—— D—— what the jury believes.' '' We think the testimony was properly admitted as it tended to show appellant's state of mind and attitude when he fired the shot that took the life of Harry Henderson.

While it appears that the trial court did not require this testimony to be presented by the state as a part of its case in chief, this was not error. We so held in *Crosby* v. *State,* 169 Ark. 1058, 277 S. W. 523. (Headnote 2): ''In a prosecution for a felony, though it would have been fairer to the accused to require the state to produce its essential witnesses as part of its case in chief, rather than to allow such witnesses to testify after accused's testimony had been offered, the latter procedure did not constitute reversible error in view of the discretion vested in the trial court in the matter of the order of introducing testimony.''

Finding no error, the judgment is affirmed.